

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD FOBIAN,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the<br>Social Security Administration,<br><br>    Defendant. | Case No. ED CV 08-567 PJW<br><br>MEMORANDUM OPINION AND ORDER |

Before the Court is Plaintiff's appeal of a decision by Defendant Social Security Administration ("the Agency"), denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Because the Agency's decision that Plaintiff was not disabled within the meaning of the Social Security Act is not supported by substantial evidence, it is reversed and the case is remanded for further proceedings.

In 2004, Plaintiff applied for DIB and SSI. (Administrative Record ("AR") 29, 30.) After the Agency denied the applications, Plaintiff requested and was granted a hearing before an Administrative Law Judge ("ALJ"). (AR 29-42, 44, 46-47.) On January 9, 2006, Plaintiff appeared with counsel at the hearing and testified. (AR

1  366-402.)  On April 24, 2006, the ALJ issued a decision, finding that
2  Plaintiff was disabled from December 18, 2003 to December 19, 2004,
3  but was able to work thereafter.  (AR 16-28.)  After the Appeals
4  Council denied Plaintiff's request for review, (AR 5-9), he commenced
5  this action.

6      Plaintiff claims that the ALJ erred by: 1) rejecting his and his
7  wife's testimony; and 2) failing to consider evidence supporting the
8  existence of a mental impairment.[1]  (Joint Stip. at 4-6.)  For the
9  following reasons, the Court concludes that the ALJ erred when he
10 rejected Plaintiff's and his wife's testimony without providing
11 adequate reasons for doing so.

12     ALJ's are tasked with judging the credibility of witnesses.  In
13 making a credibility determination, an ALJ may take into account
14 ordinary credibility evaluation techniques.  *Smolen v. Chater*, 80 F.3d
15 1273, 1284 (9th Cir. 1996).  Where, as here, a claimant has produced
16 objective medical evidence of an impairment which could reasonably be
17 expected to produce the symptoms alleged and there is no evidence of
18 malingering, the ALJ can only reject the claimant's testimony for
19 specific, clear, and convincing reasons.  *Id.* at 1283-84.  In making a

---

[1] In the Joint Stipulation, Plaintiff identifies only one issue for determination: "Whether the ALJ erred in his findings of Plaintiff's and his spouse's credibility in order to find that Plaintiff was not disabled after December 19, 2004.  Specifically, whether the ALJ erred in his determination of the scope of Plaintiff's disability and categorization under the vocational expert's finding." (Joint Stip. at 3.)  The argument that follows, however, makes clear that Plaintiff assigns error not only to the ALJ's credibility determination but also to the ALJ's failure to account for Plaintiff's alleged mental limitations.  (Joint Stip. at 4-6.)

credibility determination, the ALJ may take into account, among other things, ordinary credibility evaluation techniques and the claimant's daily activities. *Smolen*, 80 F.3d at 1284.

Plaintiff testified at the administrative hearing that, as a result of injuries he sustained when he fell off a ladder in December 2003, he can no longer work as an exterminator. (AR 370-71, 378-79.) In particular, he testified that he "would injure himself" if he did not limit his movements, and that he suffered from constant pain and numbness in his hip, which his doctors had told him was permanent. (AR 381-82.) Plaintiff described his hip pain as normally a level two, on a one to ten scale, but that it increased to level five daily and, sometimes, went as high as eight. (AR 386-91.) He explained that he takes medication when his pain gets "unbearable," but that he did not want to take too much because it was addictive and because it might harm his liver. (AR 383, 391-92.) Plaintiff testified that he also experiences thigh pain that normally is at a level three, but rises to a level six through normal repetition, and increases to an eight when he exerts himself too much. (AR 386-91.) According to Plaintiff, his pain prevents him from sitting, standing, or walking for longer than ten minutes. (AR 387-88.) Plaintiff also testified that he has lost about 30% of his range of motion in his lower body as a result of his injuries from the fall. (AR 388.)

In a written "Disability Report - Appeal" that he filled out on June 15, 2004, Plaintiff stated that he did not qualify for Medi-Cal coverage until February 24, 2004; that the surgeon who performed the emergency surgery in December 2003 declined to treat him after the surgery unless he had medical insurance other than Medi-Cal; and that he was going to make an appointment to have x-rays taken and reviewed

once he found a surgeon in his region who would accept Medi-Cal. (AR 104-05.)

In a "Function Report - Adult" that he filled out on July 1, 2004, Plaintiff stated that he could perform various household chores for three to ten minutes at a time; that he could no longer cycle or hike, but could still play the guitar "for a little while"; that he could walk for no longer than five minutes at a time; and that his wife did the cooking and shopping, and handled the household accounts. (AR 115-17.)

Plaintiff's wife, Mary Fobian, completed a "Function Report - Adult Third Party" on July 19, 2004. (AR 122-30.) She reported that Plaintiff suffered from "lots of pain," could not sit or stand for long periods of time, was unable to do household chores, did not drive, and could only walk a short distance before needing to rest. (AR 122-30.)

In his decision, the ALJ determined that Plaintiff was disabled within the meaning of the Social Security Act between December 18, 2003 and December 18, 2004, but that he was able to work thereafter, meaning that he was not disabled between December 19, 2004 and the date of decision, April 24, 2006. (AR 19-28.) In finding that Plaintiff's condition improved after December 19, 2004, the ALJ primarily relied on the opinion of neurologist Bijan Zardouz, who examined Plaintiff on April 21, 2005 and July 28, 2005, and who concluded that Plaintiff was stable and could be discharged from his doctor's care but should avoid "any heavy lifting and repetitive bending to prevent further pain in his right hip region." (AR 26, 274-77.)

The ALJ found that, after December 19, 2004, Plaintiff could lift and carry ten pounds frequently and 20 pounds occasionally; stand, walk, or sit for six hours in an eight-hour workday; occasionally crouch and climb ramps and stairs; frequently balance and stoop; but was limited in pushing and pulling with his right leg; and precluded from kneeling, squatting, crawling, climbing ladders and scaffolds; and from working around exposure to vibrations and environmental hazards. (AR 26.) The ALJ rejected Plaintiff's and his wife's testimony regarding his limitations, which the ALJ found were "not entirely credible." (AR 26, 27.) In addition, he gave the following reasons for finding that Plaintiff's testimony regarding his physical symptoms was not credible:[2] (1) his medical treatment had been "routine and conservative" since December 19, 2004, limited to "ibuprofen as needed and occasional consumption of Vicodin with no indication of any significant side effects"; and (2) Plaintiff's own statements show that he was "independent for all self-care activities, performs a variety of daily activities, interacts with others on a superficial basis, and engages in purposeful activity when he is motivated to do so[,]" activities which are inconsistent with his testimony regarding his symptoms. (AR 27.) The ALJ did not provide any reasons for discounting Plaintiff's wife's testimony. (AR 27.) For the reasons set forth below, the Court finds that the ALJ erred in rejecting Plaintiff's and his wife's testimony without setting forth legally adequate reasons for doing so.

---

[2] The ALJ also determined that Plaintiff's testimony regarding his alleged mental impairments was not entirely credible based on the lack of any history of mental health treatment or psychiatric care. (AR 27.) As discussed below, this part of the ALJ's decision is substantially supported by the record and is affirmed.

5

The ALJ's finding that Plaintiff's treatment had been routine and conservative, while accurate, is not a proper reason for discounting the testimony because, as Plaintiff explained, his failure to obtain further treatment was due to his inability to pay for it. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (reaffirming that "disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds.") (quoting *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995)); *see also* Social Security Ruling 96-7p ("[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide . . . that may explain infrequent or irregular medical visits or failure to seek medical treatment.") Plaintiff stated in a written report in June 2004 that the doctor who performed the emergency surgery after Plaintiff fell would not treat him after the surgery because Plaintiff did not have medical insurance. (AR 104.) In March 2004, Plaintiff saw Dr. Paul Phaguda, who ordered x-rays for review "by a bone surgeon," but Plaintiff claimed that he did not see one because he was unable to find a doctor who would treat him under Medi-Cal. (AR 104.) In a neurological report, which the ALJ relied on to find that Plaintiff's condition had improved, Dr. Zardouz noted that Plaintiff had not had physical therapy "since his last visit because his insurance did not cover it." (AR 274.) According to Plaintiff, he also requested additional sessions of aquatherapy, which had helped him in July 2004, but Medi-Cal would not pay for it. (AR 274, 275.) The ALJ's finding that Plaintiff was not credible in part because he was treated conservatively without discussing Plaintiff's explanation

as to why he had not pursued more aggressive treatment was error. On remand, the ALJ should address Plaintiff's claim that he did not receive additional treatment because he could not afford it and local doctors would not accept him as a patient because he was on Medi-Cal.

The ALJ also relied on the fact that Plaintiff was not using strong pain relievers to treat his symptoms to conclude that he was not truthful. This is a valid reason to discredit a claimant's testimony, but the ALJ overlooked Plaintiff's explanation as to why he did not use more powerful medicine, i.e., because it was addictive and had the potential to harm his liver, which was already at risk from hepatitis. (AR 27, 383, 391-92.) This was error. See, e.g., Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (holding ALJ erred by rejecting credibility of witness based in part on claimant's failure to take more potent pain medication without addressing his claim that he chose not to because of adverse side effects of medication).

The ALJ also found that Plaintiff's reported daily activities conflicted with his testimony regarding his limitations. (AR 27.) Though, in general, this too is a valid reason for questioning a claimant's testimony, Orn, 495 F.3d at 639, for the reasons explained below, the Court finds that the record does not support the ALJ's findings in this regard.

The ALJ found that Plaintiff was "independent for all self-care activities, performs a variety of daily activities, interact[s] with others on a superficial basis, and engages in purposeful activity when he is motivated to do so." (AR 27.) The ALJ's characterization of Plaintiff's reported activities and limitations overlooks evidence that is inconsistent with such a finding. For example, though

7

Plaintiff concedes that he is able to shower and dress himself, he also points out that he walks with a cane, can only do household chores for three to ten minutes per task, and has to take naps during the day. (AR 115, 121.) Moreover, nothing in Plaintiff's account--or elsewhere in his testimony--conflicts with his repeated claims that he can stand, sit, and walk for a maximum of ten minutes at a time. (AR 115, 118, 121.) The ALJ's summary depicts a level of activity and ability far beyond that actually reported by Plaintiff. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (reversing denial of benefits where ALJ's credibility findings was based on inaccurate paraphrasing of record material). In fact, Plaintiff's claimed daily activities were minimal. On remand the ALJ should reconsider this finding.

The final reason provided by the ALJ for rejecting Plaintiff's testimony of disabling symptoms was that it was inconsistent with all of the "aforementioned factors." (AR 27.) The Court is not certain as to what factors the ALJ was referring to, which makes it impossible for the Court to determine whether the ALJ's finding was supported by clear and convincing evidence.

On remand, the ALJ is directed to reconsider the credibility issue. In doing so, he should discuss how Plaintiff's claim of lack of funds and private insurance plays into his failure to seek more aggressive medical care; how Plaintiff's concerns about taking powerful pain relievers does or does not justify his failure to do so; and how Plaintiff's claimed restrictions comports with the ALJ's finding that Plaintiff had a fairly active lifestyle. The ALJ should

also set forth what he meant when he referred to the "aforementioned factors" in concluding that Plaintiff's testimony was not supported by the evidence.

As to the wife's testimony, it is not clear exactly why it was rejected. The ALJ concludes summarily that the wife's statements concerning the intensity, duration, and limiting effects of the Plaintiff's symptoms "are not entirely credible." (AR 27.) The only explanation he provides is that the testimony was not credible because of the "aforementioned factors," of which the Court cannot determine what factors the ALJ was referring to. (AR 27.) Though the standard for rejecting lay testimony is low, i.e., an ALJ need only set forth reasons that are germane to the witness, *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993), the ALJ's reasons here do not meet that standard. For that reason, the ALJ should further address the wife's testimony on remand and set forth the reasons for discounting it.

In his second claim of error, Plaintiff contends that the ALJ failed to account for his mental impairment. (Joint Stip. at 6.) Plaintiff points out that a medical record dated December 29, 2005 shows he "was forced to be placed on anti-depressants" and that his "depression screening even came back positive." (Joint Stip. at 6.) For the following reasons, the Court finds this claim is without merit.

In his decision, the ALJ noted that Plaintiff had been treated for depression, but found that "there is no indication that [he] has required or received any other psychiatric treatment other than anti-depressant medication prescribed by his primary care physician, and there is no other history of a mental condition, psychiatric hospitalization, or outpatient treatment." (AR 23.) The ALJ found

that there was no evidence that Plaintiff had a mental impairment causing any functional limitations that lasted for twelve months or longer. (AR 23.) The record supports this finding.

The December 2005 medical records relied on by Plaintiff are actually dated April 19, 2004, during the period that the ALJ found him to be disabled. (AR 295, 299.) (The records were *printed* on December 29, 2005. (AR 293-302.)) There are no other records during the period at issue that support the existence of a disabling mental impairment. Furthermore, the ALJ was entitled to rely on the state agency psychiatrist's findings that Plaintiff had no more than mild functional limitations as a result of his depression. (AR 24, 253-65.) For these reasons, the Court concludes that this claim does not warrant remand.

For the foregoing reasons, the Agency's decision is reversed and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

DATED: October 18, 2009.

/s/ Patrick J. Walsh
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

C:\Temp\notesE1EF34\Memo_Opinion.wpd